**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | | |
|---|---|---|
| **ANGELA SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **3:04 CV 725** |
| | ) | |
| **SOUTHERN INDIANA** | ) | |
| **MANUFACTURING CO., INC., d/b/a** | ) | |
| **Pleasure Pools, and KEVIN BISHOP,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>OPINION and ORDER</u>**

Plaintiff Angela Smith commenced this action on November 23, 2004, by filing a complaint alleging that her supervisor at work, defendant Kevin Bishop ("Bishop"), sexually harassed her and ultimately assaulted her, causing her constructive discharge. She alleges that her employer, Southern Indiana Manufacturing Company, Inc. ("SIMCO") is liable under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and that Kevin Bishop is liable under state law theories of assault, battery and intentional infliction of emotional distress. SIMCO and Bishop have filed a joint motion[1] for summary judgment, arguing mainly that Bishop was neither SIMCO's employee nor Smith's supervisor, meaning that SIMCO has no liability under Title VII for his actions. Once the Title VII claims are disposed of, SIMCO

---

[1] Although the motion was filed jointly, it is concerned almost wholly with SIMCO's potential liability under Title VII. The court will, therefore, use "SIMCO" as a collective reference to the defendants when discussing the defendants' arguments. The court will use "Bishop" or "Kevin" to identify Kevin Bishop individually.

believes that the court should decline to exercise supplemental jurisdiction over Smith's state-law claims against Bishop, and dismiss them for adjudication in state court.

In addition, after Smith responded to the motion, SIMCO moved to strike many of her factual assertions as unsupported by evidence that would be admissible at trial. *See Gustovich v. A.T. & T. Communications, Inc.*, 972 F.2d 845, 849 (7th Cir. 1992) ("When acting on a motion for summary judgment the judge considers only evidence that would be admissible at trial."). In the present case the issues that are pertinent to the summary judgment motion can be determined by considering only factual assertions to which SIMCO has no objection.[2] Therefore, because Smith might not attempt at trial to use the facts to which SIMCO objects, ruling on SIMCO's motion to strike would amount to an advisory opinion. The court therefore **DENIES** SIMCO's motion to strike as moot.

RULE 56 directs this court to enter summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). When considering the motion, the court must construe all of the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Laborers' Pension Fund v. RES*

_____

[2] The court is also of the view that many of the statements which SIMCO characterizes as unsupported statements of fact, *e.g.*, item 33 in the motion, seeking to strike from the concluding section of Smith's memorandum the phrase "[s]ince Kevin Bishop was a supervisor and the harasser," are nothing more than argument. The court is able to distinguish argument from fact.

*Environmental Services, Inc.*, 377 F.3d 735, 737 (7th Cir. 2004). The Court of Appeals has

concisely summarized the summary judgment methodology on many occasions, *e.g.*:

> A motion for summary judgment should be granted when
> there is no genuine issue as to any material fact and the
> moving party is entitled to a judgment as a matter of law. In
> determining whether a genuine issue of material fact exists,
> "a trial court must view the record and all reasonable
> inferences drawn therefrom in the light most favorable to the
> non-moving party." To defeat a motion for summary
> judgment, the non-moving party cannot rest on the mere
> allegations or denials contained in his pleadings, but "must
> present sufficient evidence to show the existence of each
> element of its case on which it will bear the burden at trial."
> However, neither presenting a scintilla of evidence, nor the
> mere existence of some alleged factual dispute between the
> parties or some metaphysical doubt as to the material facts,
> is sufficient to oppose a motion for summary judgment. The
> party must supply evidence sufficient to allow a jury to
> render a verdict in his favor.

*Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1087-1088 (7th Cir. 2000) (citations

omitted).

## I. OVERVIEW

Briefly, as a statement of the parties' positions to establish context for the

discussion that follows, and not as a statement of facts that the court finds to be

undisputed or put into dispute by admissible evidence,[3] Smith was one of two

managers of SIMCO's "Pleasure Pools" retail store located in Mishawaka, Indiana. In

addition to being an assumed name under which SIMCO was conducting business at

that location, "Pleasure Pools" was also a trademark, owned by another corporation,

---

[3] This description is for the most part, however, taken from undisputed facts.

applied to the swimming pool kits[4] SIMCO sold. Customers could purchase pool kits and supplies at the Pleasure Pools store, and arrange for installation and service of their pools. SIMCO also operated a Pleasure Pools retail store in Niles, Michigan.

SIMCO itself did none of the pool installation or service. That work was done by a subcontractor, Twin Cities Pleasure Pools, Inc. ("Twin Cities"), a corporation solely owned by Bishop. In addition, sales leads requiring a visit to the potential customer's home were referred to Twin Cities. Twin Cities would purchase the pools and supplies it sold at wholesale prices from SIMCO. Twin Cities also operated its own retail store in Benton Harbor, Michigan, using the assumed name "Pleasure Pools" with SIMCO's permission, although not memorialized in a written licensing agreement. This level of trust and integration between SIMCO's and Twin Cities' businesses can perhaps be explained by the fact that SIMCO is solely owned by Bishop's father, Gerald Bishop.

Gerald Bishop resides in French Lick, Indiana, approximately 250 miles from Mishawaka, and on very infrequent occasions visits the Mishawaka Pleasure Pools store. He has delegated the responsibility for the store to his wife, Carol Bishop, who is Kevin Bishop's mother. Carol Bishop visits the Pleasure Pools store infrequently, perhaps as often as a brief visit once a week. Because of Kevin's expertise and knowledge of the pool business, Carol valued his advice in running the business. Thus, in addition to his sales, maintenance and installation work as a subcontractor, Kevin

---

[4] SIMCO purchased pools and necessary accessories from various manufacturers and packaged these components together as a Pleasure Pools kit.

4

also advised Carol on other aspects of the business. For example, Carol would have Kevin interview potential employees for the Mishawaka store and she would listen to his advice on whether or not to hire them. Kevin was in the Mishawaka Pleasure Pools store frequently.

According to Smith, beginning in September 2003, Kevin made regular unwelcome romantic and sexual overtures to her, including fondling her. At one point she complained about his conduct to Donald Mitchell, whom she understood to be SIMCO's National Sales Manager. (Whether her understanding was correct will be considered further below.) The event that precipitated the present suit occurred on the October 24, 2003, when Bishop grabbed Smith's hand and placed it on his exposed penis, telling her to "suck his [penis] and make him feel good." Smith ran out of the store, with him following her, but she got in her car and left.

Smith contacted Carol Bishop, and later that day (or the next) met with her in the parking lot of a J.C. Penney store where they sat in Carol Bishop's car. She told Carol what Kevin had done, and that she had reported the incident to the police. Carol told her that she needed to drop the charges. A few days later Carol called Smith and asked her to come back to work, saying that she would see if she (Carol) could "take over the store." On October 27 or 28, Carol called Smith again and told her that she could not take over the store, and that she could not "watch Kevin 24 hours a day." At that point Smith concluded that she would not return to work, and she views the circumstances as amounting to a constructive discharge.

5

**II. ANALYSIS**

The court addresses SIMCO's arguments in the order SIMCO makes them, and using SIMCO's categorization of Smith's claims.

*1. Claims against "Pleasure Pools"*

First is an issue that is essentially a matter of housekeeping. In addition to naming SIMCO and Bishop as defendants, Smith also named "Pleasure Pools, a Division of Southern Indiana Manufacturing, Inc." SIMCO asserts that "Pleasure Pools" is a trademark for the pool kits it sells and an assumed name under which it does business, not a separate entity that has standing to sue or be sued in its own name, and Smith does not contest this assertion. SIMCO argues that because a judgment cannot be entered against a non-entity, "Smith's claims against 'Pleasure Pools' fail as a matter of law."

Even if Smith were correct, and "Pleasure Pools" were a division of SIMCO, an unincorporated division cannot be sued in its own name. *Spearing v. National Iron Co.*, 770 F.2d 87, 88-89 (7th Cir. 1985). Accordingly, while the court agrees with SIMCO that a judgment cannot be entered against "Pleasure Pools," it is unclear what the purpose or effect of granting summary judgment to SIMCO on this point would be, given that Smith has pleaded all of the same claims against SIMCO, and SIMCO admits that it employed her. *Cf. Sembos v. Philips Components*,  376 F.3d 696, 699 n. 1 (7th Cir. 2004) (addressing merits where corporate defendant had notice, participated, and never sought dismissal although only a division had been named as defendant). In the court's

6

view, the proper course here is simply to amend the caption of the case to reflect that there are two defendants, Bishop and "Southern Indiana Manufacturing Company, Inc., d/b/a Pleasure Pools." Any judgment that Smith may obtain will be in this form, and no summary judgment on the issue is necessary.

*2. SIMCO's liability for assault and battery*

In paragraph 25 of her complaint, Smith pleaded that SIMCO is liable for Kevin Bishop's alleged assault and battery under the doctrine of respondeat superior. SIMCO, citing cases such as *Sword v. NKC Hospitals, Inc.*, 714 N.E.2d 142 (Ind. 1999), responds with the inarguable proposition, under Indiana law, that while masters are liable via respondeat superior for the negligence of their employees, they are not, generally speaking, liable for negligence committed by independent contractors. SIMCO argues that the undisputed facts show that it employed Bishop[5] as an independent contractor, and SIMCO therefore may not be held liable for his alleged assault and battery via respondeat superior.[6]

---

[5] To be precise, SIMCO argues that it employed Twin Cities as the independent contractor, and that Bishop was Twin Cities' employee. In addition to being one of its employees, Bishop was the sole owner and chief officer of Twin Cities. Therefore, for simplicity the court refers to Bishop as the independent contractor.

[6] The court has summarized the argument as SIMCO has made it. The court assumes that SIMCO realizes that assault and battery are both intentional, not negligent, torts, and that what SIMCO meant was that a master is not generally liable for an independent contractor's *torts*. *See, e.g., Stone v. Pinkerton Farms, Inc.*, 741 F.2d 941, 946 (7th Cir. 1984) ("general rule in Indiana is that a principal is not liable for the torts of an independent contractor").

7

The question of whether one acts as an employee or as an independent contractor is generally for the jury, but may be determined by the court as a matter of law when the evidence is undisputed and reasonably susceptible to only one conclusion. *Moberly v. Day*, 757 N.E.2d 1007, 1009 (Ind. 2001) (citing *Mortgage Consultants, Inc. v. Mahoney*, 655 N.E.2d 493 (Ind.1995) and *Hale v. Kemp*, 579 N.E.2d 63 (Ind. 1991)); *GKN v. Magness*, 744 N.E.2d 397, 402 (Ind. 2001); *Howard v. U.S. Signcrafters*, 811 N.E.2d 479, 481-82 (Ind. App. 2004). The Indiana cases direct the court to examine ten factors:

> (1) the extent of control which, by the agreement, the master may exercise over the details of the work;
> (2) whether or not the one employed is engaged in a distinct occupation or business;
> (3) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
> (4) the skill required in the particular occupation;
> (5) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
> (6) the length of time for which the person is employed;
> (7) the method of payment, whether by the time or by the job;
> (8) whether or not the work is a part of the regular business of the employer;
> (9) whether or not the parties believe that they are creating the relation of master and servant; and
> (10) whether the principal is or is not in business.

*Moberly*, 757 N.E.2d at 1010 (citing *Restatement (Second) of Agency* § 220(2) (1958)); *Howard*, 811 N.E .2d at 482.

When undertaking this analysis, the court should "consider all factors, and no single factor is dispositive." *Moberly*, 757 N.E.2d at 1010 (citing *Mortgage Consultants*, 655 N.E.2d at 496). Moreover, the factors are used in a balancing test, not a test where the

majority wins. See *GKN*, 744 N.E.2d at 402. "[A]lthough not dispositive, the right to control the manner and means by which the work is to be accomplished is the single most important factor in determining the existence of an employer-employee relationship." *Id*. at 403; *Moberly*, 757 N.E.2d at 1010.

SIMCO, without extensive analysis, lists seven factors—essentially conclusions that it derives from underlying facts it argues are not in dispute—which it believes are germane to the  employee-vs.-independent-contractor analysis: 1) SIMCO did not exercise control over how Bishop (or any Twin Cities employees) performed service work; 2) Bishop's service work took place in customer's homes, not on SIMCO's premises; 3) Bishop owned his own retail pool business, separate from SIMCO's retail business; 4) Bishop and other Twin Cities employees had specialized knowledge regarding pool maintenance; 5) SIMCO paid Bishop "by the job as service work was completed and then paid for by the customer;" 6) SIMCO and Bishop clearly understood that Bishop was an independent contractor; and 7) SIMCO is a separate corporation that has always operated independently of Bishop. SIMCO then argues that these "factors . . . weigh on the side of Twin Cities [Bishop] being an independent contractor." Defendants' Memorandum in Support of Defendants' Motion for Summary Judgment (DE # 43-1)[7] (hereinafter "Memorandum in Support") at 15.

---

[7] All citations to "DE #" identify the docket entry link in the court's Case Management/Electronic Case Filing system.

It should be immediately pointed out that saying that the factors "weigh on the side" of Bishop being found an independent contractor is far different from saying that independent-contractor status is the only reasonable conclusion that can be drawn from the facts. SIMCO's less-than-conclusive but honest characterization is consistent with the court's view of the evidence. The court does not think that SIMCO's seven factors, listed above, are the only fair conclusions that can be drawn from the undisputed facts, and SIMCO has failed to consider the role of other facts in the equation and their pertinence to the ten-factor list provided by the Indiana courts. For example, SIMCO doesn't consider the second (whether Bishop was in a distinct business) and tenth (whether SIMCO was also in the business) factors in that list. The facts that Bishop and SIMCO were not in distinct occupations or businesses, but instead were both in the pool business—and that Bishop was operating using a variation of the Pleasure Pools trademark used by SIMCO—weighs against independent contractor status.

That said, it doesn't take an exhaustive discussion of all of the factors or all of the undisputed evidence to explain why Bishop's status presents a question of fact. For example, SIMCO asserts that Bishop's service work took place in customer's homes, not on SIMCO's premises. That is true, as far as maintenance of swimming pools goes. But there is undisputed evidence (or disputed evidence that must be resolved in Smith's

10

favor) that Bishop was on SIMCO's premises on a regular basis, and both on and off those premises took actions consistent with having supervisory status over Smith.[8]

To give only a few examples of evidence in Smith's favor on this issue, Bishop instructed Smith to accompany him to trade shows, and when she did so, SIMCO paid her for her time and mileage.[9] Smith dep. at 27-28, 105. When Bishop followed up on "pool leads," that is, made sales calls to the homes of individuals that had called SIMCO about buying a pool, Smith sometimes accompanied him. SIMCO paid her normal hourly wages for doing so, Smith dep. at 116, and she also made a commission of several hundred dollars on a sale, id., which was paid by Bishop himself. K. Bishop dep. at 144 (describing it as a "gift in appreciation"); 266-67. Carol Bishop, who, according to SIMCO, was Smith's supervisor, knew that Smith accompanied Kevin on some sales calls. Carol Bishop dep. at 166.[10]

---

[8] The court notes that SIMCO agues in Defendants' Reply in Support of Defendants' Motion for Summary Judgment (DE # 57) (hereinafter, "Defendants' Reply"), that Smith has failed to respond to its argument that Bishop was an independent contractor, and instead only argues that he was her supervisor. Perhaps Smith's argument could be clearer, but the court understands her argument that Bishop functioned as her supervisor to mean it can be inferred that he was an employee of SIMCO.

[9] In Defendants' Reply SIMCO argues that it did so because Smith was promoting Pleasure Pools products. The fact remains that Bishop was the one that directed her to attend the shows.

[10] Smith also argues that Bishop admitted that he had the power to transfer employees, citing pages 180-82 of his deposition as support. There is no clear admission on page 180, and Smith has not provided pages 181 and 182. The court cannot rely on evidence that a party cites but fails to provide.

Evidence such as this indicates that although Bishop owned his own swimming pool business, and may have acted as an independent contractor in conducting SIMCO's in-home sales and maintenance operations, that does not exclude the possibility that Bishop was an employee of SIMCO for other purposes, such as supervising staff.[11] As to that possibility, there is undisputed evidence in the record of a letter that Bishop wrote to Smith shortly after the alleged assault in this case, containing statements such as:

> It is so exciting how nice the Mishawaka store will be next year. Soon I plan on having you sell the Inground Pools by yourself or with Kelly and I will simply be technical support.
>
> I want to thank you so much for making Pleasure Pools the BEST place for customers to go for their swimming pool needs. You will never know how important you are to Pleasure Pools. Pleasure Pools is the BEST and you make it that way, you really do. . . .
>
> . . . You always made my mom happy with your work and with your wonderful attitude which made it easy on me because I used to get grief from her over Trish [[12]] nearly every day.
>
> I want you back next year, Kelly wants you back next year, my mom wants you back next year, your customers want you back next year.

---

[11] Although this court has found no Indiana cases recognizing, in the context of vicarious tort liability, the possibility of status as both an independent contractor and as an employee, Indiana workers' compensation cases recognize the closely-related concept of dual-employee status. *See, e.g.*, *Vincent v. Pursley*, 119 Ind. App. 53, 83 N.E.2d 431 (1949) ("[O]ne may be an independent contractor as regards some phases of his work and at the same time an employee as to other phases.") The issue of employee/independent-contractor status for purposes of vicarious tort liability under Indiana law borrows heavily from the workers' compensation arena.

[12] Trish Mendenhall was a former manager of the Mishawaka Pleasure Pools store. See Memorandum in Support at 4; Smith dep. at 43.

Plaintiff's Opposition to Defendants' Motion for Summary Judgment (hereinafter, "Plaintiff's Opposition"), [unnumbered] ex. 8 (continued deposition of Kevin Bishop), deposition ex. 8. Considered along with Smith's testimony that after the alleged assault Carol Bishop stated that she would see if she could "take over" the store (the implication being that it would be taken over from Kevin), and the fact that Bishop was, more or less, SIMCO's sales and maintenance force, this casts some doubt on SIMCO's assertions that SIMCO and Bishop always "operated independently" and that both parties "clearly understood that Bishop was an independent contractor."[13] In short, resolving the disputed evidence and all inferences that can be drawn therefrom in Smith's favor, the court doesn't believe that SIMCO has demonstrated that Bishop's status is an issue that can be resolved as a matter of law on summary judgment.[14]

*3. SIMCO's liability for gender discrimination in the form of harassment*

SIMCO argues that Smith does not even have sufficient evidence to establish a prima facie case. For analytical purposes, SIMCO parses Smith's case into two separate

---

[13] The court notes that SIMCO argues in Defendants' Reply that Kevin's letter, considered in the context that he was contemplating purchasing the Mishawaka store, does not suggest that he viewed himself as Smith's supervisor. Applying the context to the letter is a job for the finder of fact, however, not this court.

[14] The court notes that SIMCO's argument that Bishop was not an employee seems to depend to a large extent on the fact that he was not on SIMCO's payroll. See Defendants' Reply at 4 ("Plaintiff failed to produce any documents to controvert the testimony of SIMCO's bookkeeper, Elizabeth Rock, who testified that Kevin was never paid by SIMCO."). If this is the test, then SIMCO's attempt to sink Smith's case because she didn't report Kevin Bishop's conduct to Carol Bishop must fail, because Carol Bishop would not be an employee of SIMCO, either. See G. Smith dep. at 42 (Carol neither employed nor paid by SIMCO). *See also infra* text accompanying note 16.

theories, one of hostile environment sexual harassment, and one of quid pro quo sexual harassment. In *Burlington Industries, Inc. v. Ellerth* the Court explained that these terms are useful mainly to mark the line between cases where threats are carried out from cases where threats are not made or are made but not carried out. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 751 (1998). The Court also observed that the terms remain helpful when there is a "threshold question whether a plaintiff can prove discrimination." *Id*. at 753. The court will, therefore, proceed following SIMCO's distinction between hostile environment harassment and quid pro quo harassment.

*A. Hostile environment harassment*

SIMCO correctly starts from the premise that to present a prima facie case, Smith must have evidence that would allow a jury to find that: 1) she was subject to unwelcome harassment; 2) the harassment was based on her gender; 3) the harassment was severe and pervasive; and 4) there is a basis for employer liability. *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354-55 (7th Cir. 2002); *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998); *see Mason v. Southern Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000). SIMCO takes issue only with the fourth element of Smith's case, arguing that she has no facts showing that there is a basis for employer liability.

First, and because the standard for holding an employer liable differs based on whether the harasser was the plaintiff's supervisor or non-supervisory co-employee, *Parkins*, 163 F.3d at 1032, SIMCO argues that there is no evidence that Kevin Bishop was Smith's supervisor. Relying on the *Hall* case, SIMCO argues that having "marginal

14

discretion" over an employee does not make a person a supervisor: for Title VII purposes, a person is not a supervisor unless he or she has the power to "*directly* affect the terms and conditions of a victim's employment" such as by hiring, firing, demoting, promoting, transferring or disciplining. *Hall*, 276 F.3d at 355. SIMCO argues that the undisputed evidence establishes that Kevin Bishop was not an employee of SIMCO and therefore had none of those powers with respect to Smith's employment.

As discussed above, the court finds that there is a disputed question of fact whether Kevin was an employee of SIMCO. In addition to its argument that Bishop was not a SIMCO employee, the only other evidence that SIMCO cites to establish that Carol Bishop had the sole authority to make personnel decisions is her and Gerald Bishop's deposition testimony. Memorandum in Support at 4 n. 19. The cited portion of Carol's deposition, p. 81 lines 1-6, pertains to whether Carol had ever heard of a person named "Angela Picarro," and does not bear on the issue at all. The cited portion of Gerald Bishop's deposition, p. 92 lines 11-14, contains this question and answer:

> Q: Who makes the decision of how many people to hire, how many now, at the Mishawaka store? Who made that decision up until a year ago?
>
> A: Carol.

This is certainly not sufficient to show that it is undisputed that Kevin Bishop lacked power to hire, fire, promote discipline, transfer, etc., even without considering additional evidence, such as the letter mentioned above, in which Kevin announced his plans to have Smith sell in-ground pools by herself, or Carol Bishop's alleged statement

15

that she couldn't take the store over from Kevin, or Trish Mendenhall's alleged statement that Kevin told her that he would have fired Smith if she didn't agree to work temporarily at Kevin's Benton Harbor, Michigan store,[15] or Kevin's alleged statement to Smith that he would fire her if she spoke to his mother about the harassment and told her that the Mishawaka store was his. Angela Smith dep. at 72-73.

The court also notes that in his deposition Gerald Bishop testified that Carol Bishop was not employed by SIMCO, but instead by a different entity, Sales Management Corporation, Inc., another corporation owned and controlled by Gerald Bishop, which owned the "Pleasure Pools" trademark and provided accounting and other services to SIMCO.  G. Smith dep. at 42. SIMCO's assertion that Carol was Smith's supervisor therefore supports the inference that in the management of the various entities operating under the Pleasure Pools umbrella, a person might exercise supervisory powers in an entity other than the entity that employed him/her.[16]

It is further relevant to this issue to note that even if the court were to ignore everything else, SIMCO admits that Carol Bishop "appreciated Kevin's professional opinions" about staffing in the store, Memorandum in Support at 4, and that he reported to her whether the employees in the Mishawaka store were performing their jobs. C. Bishop dep. at 93 ("I didn't have to, you know, go down there. So – and he

---

[15] The court notes that SIMCO did not seek to strike Smith's recitation of what Mendenhall said that Kevin Bishop said.

[16]  See also *supra* note 14.

16

could probably tell if they were ripping me off or not."). Thus, SIMCO put Kevin in a position where he had the power to make recommendations concerning Smith's employment, creating an incentive for her to accept direction from him. Considering all the evidence in the case in the light most favorable to Smith, there simply is a question of fact as to whether Kevin was Smith's supervisor.

Alternatively, if the court assumes that Kevin is a co-employee of Smith with no supervisory powers,[17] SIMCO argues that it would have no liability for his alleged conduct because Smith never reported any harassment to either Carol or Gerald Bishop, and so SIMCO neither knew of the conduct nor had the opportunity to take corrective action. An employer cannot be held liable under Title VII for harassment by an employee's co-workers when the employer has neither actual nor constructive knowledge of the harassment. *Byrd v. Illinois Dept. of Public Health*, 423 F.3d 696, 710 (7th Cir. 2005).

---

[17] SIMCO of course maintains that Kevin was not an employee, but the court has explained why it believes that is a disputed factual issue. Moreover, even if SIMCO did establish that Bishop was not its employee, that might not matter. The EEOC has promulgated a regulation stating that employers may be held liable for harassment by non-employees if it knows of the conduct and fails to take corrective action. 29 C.F.R. § 1604.11(e). The Court of Appeals has commented that this vicarious-liability standard may not be consistent with the agency principles established in *Ellerth*, *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 812 (7th Cir. 2001), but to this court's knowledge has not resolved the issue. Moreover, there clearly is a question of fact whether Kevin had SIMCO's agency to supervise Smith.

SIMCO admits, however, that Smith reported the harassment[18] to Donald Mitchell, whom Smith argues is SIMCO's "National Sales Manager." Moreover, Mitchell admitted during his deposition that although he told Smith that he would discuss the matter with Gerald Bishop, he never in fact did so. SIMCO argues that Smith's conversation with Mitchell did not give it notice of the harassment because Mitchell was not employed by SIMCO. Instead, Mitchell, like Carol Bishop, was employed by Sales Management Corporation, Inc. SIMCO's evidence of that employment is Mitchell's deposition testimony to that effect. Memorandum in Support at 6 n. 33.

The problem is, when it answered Smith's complaint, SIMCO made the following admission at paragraph 19 of its answer:

> Defendants admit that Plaintiff discussed with Don Mitchell some aspects of Plaintiff's relationship with Kevin Bishop, that Don Mitchell is another employee of SIMCO, that Don Mitchell is the manager of the Niles, Michigan SIMCO store, and that Don Mitchell is the National Sales Manager of SIMCO.

_____

[18] In Defendants' Reply SIMCO argues that Smith hasn't provided any facts showing that she disagrees with its version of what she told Mitchell, and that what she told him wasn't specific enough to give SIMCO notice that she was claiming sexual harassment. The problem is, SIMCO didn't make this specificity argument in its motion, so Smith had no need to provide those facts. In addition, because the argument appears for the first time in Defendants' Reply, Smith has not had an opportunity to respond, and the court will therefore not consider the argument. *See Wagner v. Magellan Health Services, Inc.*, 121 F. Supp. 2d 673, 680 (N.D. Ill. 2000); *Roberts v. Bd. of Educ.*, 25 F. Supp. 2d 866, 869 (N.D. Ill. 1998).

Answer filed January 12, 2005, at ¶ 19. SIMCO can't simply revoke the effect of this admission by making contrary claims in support of its motion for summary judgment,[19] and no matter what SIMCO may say now about Mitchell's status now, this alone creates an issue of fact.[20] In addition, Smith discussed some of the incidents with Kelly Caparell, Smith dep. at 68, and SIMCO does not dispute that Caparell was a manager of the Mishawaka Pleasure Pools store.[21] Given that Carol Bishop admitted in her deposition that SIMCO had no written sexual harassment policy, C. Bishop dep. at 47, and Gerald

---

[19] In Defendants' Reply, SIMCO argues that because its answer was unverified, this "mistake" was not an admission, that it never sought to amend its answer to correct the mistake because the mistake was not discovered until Mitchell was deposed, after the deadline for amending the pleadings had passed, and that Smith had notice of the mistake because of Mitchell's deposition and other discovery. Nothing in RULE 8 of the FEDERAL RULES OF CIVIL PROCEDURE requires an answer to be verified in order for it to be an effective admission, *see also Crest Hill Land Development, LLC v. City of Joliet*, 396 F.3d 801, 805 (7th Cir. 2005), and relying on what occurred during discovery is not a good excuse for failing to move to amend the answer. *Cf. Conner v. Illinois Dept. of Natural Resources*, 413 F.3d 675, 679 (7th Cir. 2005). This court has the discretion to permit a party to amend its pleadings after the deadline for amendment has passed, and is exercising that discretion now, by treating Mitchell's employment status as a contested issue of fact, rather than as an issue conclusively resolved by SIMCO's admission in its answer.

[20] It bears mentioning at this point that confusion over Mitchell's exact position in the corporate entities controlled by Bishop does not surprise the court. Gerald Bishop, when asked in his deposition whether he was an officer of Sales Management Corporation, answered that he was and that he was "*[p]robably* the president and treasurer." G. Bishop dep. at 57 (emphasis added). Thus, it may be that corporate formalities are not the strong suit of the entities Gerald Bishop controls.

[21] "In 2003, Smith worked with another SIMCO store manager, Kelly Caparell ("Caparell"), but neither Smith nor Caparell had supervisory authority over the other. Both Smith and Caparell reported to Carol." Memorandum in Support at 3 (footnotes omitted).

Bishop admitted SIMCO had "no written policy on anything," G. Bishop dep. at 48, there is plainly an issue of fact as to whether SIMCO had actual or constructive knowledge of Smith's allegations of harassment.[22] Thus, SIMCO is not entitled to summary judgment.

   *B. Quid pro quo harassment*

   An employer is subject to vicarious liability, with no affirmative defense, when a supervisor's harassment of a subordinate "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Ellerth*, 524 U.S. at 765. SIMCO argues that it is entitled to summary judgment because Bishop was not one of its supervisory employees but, as discussed above, the court believes that is a disputed issue of fact. In addition, SIMCO argues that it is entitled to summary judgment because Smith suffered no tangible adverse employment action, instead she voluntarily quit her job.

   Smith's response to this argument, relying on *Ellerth*, is that quid pro quo harassment occurs "when an employer conditions tangible employment benefits on submission to sexual demands," and that occurred in this case because:

_____

   [22] There is an alternative basis on which this issue might be decided. In his deposition Dennis Steffey testified that Mitchell stated that he had discussed the matter with Gerald Bishop. Steffey dep. at 52. In its motion to strike, SIMCO argues that Mitchell's statements to Steffey are inadmissible hearsay. As SIMCO's National Sales Manager, Mitchell's statements—including Mitchell's repetition of what Gerald Bishop, also a SIMCO officer, said—might be non-hearsay admissions by a party-opponent under FED. R. EVID. 801(d)(2).

> Kevin Bishop threatened Angela's hours if she went back
> with her boyfriend, Scott. Kevin Bishop threatened to fire
> Angela if she reported to Carol Bishop the fact that she was
> being sexually harassed. Kevin Bishop even promised more
> benefits and pay if Angela would continue to submit to his
> dominion.

Plaintiff's Opposition at 19. Even assuming that is all true, *Ellerth* unquestionably holds

that the fact that threats are not carried out is what *separates* hostile environment

harassment *from* quid pro quo harassment. *Ellerth*, 524 U.S. at 751. In fact, even a

constructive discharge does not amount to a tangible employment action. *Pennsylvania*

*State Police v. Suders*, 542 U.S. 129 (2004). SIMCO is entitled to summary judgment on

this aspect of Smith's case.

*4. SIMCO's liability for gender discrimination in the form of constructive discharge*

An employee who quits his/her job before allowing the employer to take steps to

correct the harassment the employee is suffering cannot assert a claim for constructive

discharge. *Cooper-Schut v. Visteon Automotive Systems*, 361 F.3d 421, 428-29 (7th Cir.

2004) (citing *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir.1996)). SIMCO

argues that it is entitled to summary judgment because Smith never reported the

harassment to Carol or Gerald Bishop until after she had quit her job, and thus never

gave SIMCO the opportunity to remedy the situation.

As explained above, there is a question of fact as to whether Smith gave notice to

SIMCO earlier, by speaking with Donald Mitchell and Kelly Caparell. In addition, even

after Smith told Carol of the final, severe incident involving Kevin, Carol asked Smith to

come back to work but (according to Smith) said that she would not be able to watch Kevin 24 hours a day. SIMCO argues that this statement—which a finder of fact could view as an admission that Smith would not be protected from Kevin—is not important because Smith had already made up her mind not to come back to work. The evidence of this mind-set is her statement in her deposition, after admitting that Carol asked her to come back to work, that "[t]here was no way after what I endured to go back in that office." Smith dep. at 178. SIMCO also argues, in Defendants' Reply, that Carol also told Smith that she could keep Kevin out of the store "until the end of the season"[23] but because Smith didn't come back, she deprived SIMCO of the chance to remedy the harassment.

A finder of fact could interpret Smith's "no way" statement to mean that she could not go back with Kevin present. Moreover, Smith's version of the conversation is different. When asked during her deposition whether Carol had said that she would keep Kevin away if Smith returned, Smith said that Carol said "I cannot come back there and work for him. I cannot do it." Smith dep. at 178. Then, Carol said that she would see if she could take over the store, but called back a few days later and told Smith that she couldn't watch Kevin 24 hours a day. According to Smith, "that's when I knew I ain't going back." Smith dep. at 178-79.

---

[23] The Pleasure Pools store was a seasonal business, closed from late fall until early spring, during which time the employees would be laid off.

In short, the evidence is in dispute as to when Smith concluded that she could  no longer work for SIMCO and whether she allowed SIMCO the opportunity to remedy the harassment. SIMCO's argument, like many in its motion for summary judgment, urges this court to invade the province of the fact-finder and resolve disputes in SIMCO's favor. That is not appropriate when considering a motion for summary judgment. Because the facts and inferences therefrom are in dispute, SIMCO is not entitled to summary judgment on Smith's constructive discharge claim.

*4. SIMCO's liability for retaliatory conduct*

Paragraph 10 of Smith's complaint alleges that the action is brought on the basis of "unlawful discrimination and retaliatory conduct." SIMCO argues that it is entitled to summary judgment because Smith has no evidence of any retaliatory conduct. Smith concedes this point by making no response whatsoever, and SIMCO is entitled to summary judgment on any claim for retaliation.

*5. Assault, battery and intentional infliction of emotional distress*

SIMCO requested that, should its motion for summary judgment be granted disposing of all federal claims, the court relinquish supplemental jurisdiction over these state-law claims against Kevin Bishop and dismiss them to allow their adjudication by a state court. As the court is not granting SIMCO a summary judgment on all the federal claims, that request is **DENIED**.

**CONCLUSION**

For the foregoing reasons, defendants' joint motion to strike (DE # 56) is

**DENIED**, and defendants' joint motion for summary judgment (DE # 43) is **GRANTED**

**IN PART and DENIED IN PART**. The caption of this case is amended to reflect that

there are two defendants, Southern Indiana Manufacturing Company, Inc., d/b/a

Pleasure Pools, and Kevin Bishop.


**SO ORDERED.**


Enter: September 5, 2006


                          s/James T. Moody_____
                          JUDGE JAMES T. MOODY
                          UNITED STATES DISTRICT COURT